1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                      AT SEATTLE

10    MARK CRAWFORD,                              CASE NO. C12-1642 MJP

11                        Plaintiff,             ORDER GRANTING
                                                 DEFENDANT'S MOTION FOR
12         v.                                    SUMMARY JUDGMENT

13    JP MORGAN CHASE NA,

14                        Defendant.

15

16         This matter comes before the Court on Defendant's motion for summary judgment. (Dkt.

17   No. 26.) The Court considered the motion, Plaintiff's response (Dkt. No. 33), Defendant's reply

18   (Dkt. No. 35) and all related documents. In his response, Plaintiff included a cross-motion for

19   partial summary judgment. (Dkt. No. 33.) As discussed below, this cross-motion was improper

20   and not considered. Defendant's motion for summary judgment is GRANTED.

21                                       **Background**

22         This is an employment case. Plaintiff Mark Crawford alleges Defendant JP Morgan

23   Chase, NA ("Chase") willfully failed to grant him family medical leave he was entitled to under

24   the Family Medical Leave Act, 29 U.S.C. §2615(a) ("FMLA"), and wrongfully terminated his

1   employment in violation of the FMLA. (Dkt. No. 16 at 6.) Crawford also alleges Chase's actions

2   violated the Washington Family Leave Act, RCW 49.78.300 ("WFLA").

3          Crawford is a former Chase employee. (Dkt. No. 16 at 1.)  He entered into employment

4   with Chase as a Mortgage Loan Officer on or around January 6, 1997. (Id. at 3.) Crawford was

5   based out of a central office until Chase started assigning loan officers to branch offices, at

6   which point he was assigned to the Chase branch at 1201 3rd Avenue in Seattle, Washington.

7   (Dkt. No. 26 at 5.) As a loan officer, Crawford reported directly to a senior loan officer rather

8   than his branch manager. (Id.) Crawford reported to Senior Loan Officer Donna Corallino.  (Id.)

9          Corallino issued Crawford a written warning on November 24, 2009 citing branch

10  manager complaints of "repeated negligence pertaining to security issues, including safeguarding

11  customer information . . . violations in following opening and closing procedures," and other

12  concerns related to Crawford's performance. (Dkt. No. 32-1 at 31.)  In December of 2009,

13  Corallino received a complaint about Crawford's performance from Senior Loan Processor

14  Charity Bergmann, citing customer complaints. (Id. at 35.) Crawford received a "Needs

15  Improvement" rating in reviews dated February 2009 and February 2010. (Id. at 34.)

16         On March 3, 2010, Crawford learned while at work his mother had been seriously

17  injured, and informed his branch supervisors he had to leave immediately. (Dkt. No. 32-1 at 8.)

18  With Corallino's approval, Crawford was out of the office for three days. (Dkt. No. 16 at 3.)

19  Crawford's mother required surgery and needed intensive post-surgery care for at least six

20  months. (Id.) Crawford was primarily responsible for his mother's care, and had to leave work

21  almost daily to visit her. (Dkt. No. 32-1 at 10.) Crawford claims while he was not actually

22  stopped from leaving, he was criticized by his managers for his absences. (Id.)

23

24

1    On March 17, 2010, Crawford sent Corallino an E-Mail he describes as "an express

2    request for leave." (Dkt. No. 32-1 at 11.) He states he sent the message because he felt he was

3    receiving criticism and disapproval for his absences, and when he asked for leave in the past he

4    had been refused. (Id.) Plaintiff testified to feeling conflicted about taking time to care for his

5    mother while he perceived his managers were taking note of his absences and failures to manage

6    his work. (Id.) This is the first written request for leave Crawford made. (Id.) Crawford also

7    claims he faxed Human Resources a printed copy of the March 17th E-Mail to Corallino, and

8    complained to them Corallino "interfered with his attempt to exercise his rights under the federal

9    FMLA and Washington's FLA." (Dkt. No. 16 at 5.)

10    Following the written request for leave, Corallino called Crawford and the two had an in

11    person meeting. (Dkt. No. 32-1 at 11.) At this meeting, Corallino proposed a plan that did not

12    include leave but did include certain flexible arrangements. (Id.) Crawford agreed to the plan and

13    did not make any further written complaints. (Id.)

14    On April 20, 2010, Crawford backdated and processed a loan lock extension request via

15    Chase's loan lock system. (Dkt. No. 33 at 7.) The Chase loan lock extension policy requires any

16    requests for an extension be submitted by 7 p.m. local time on the day of expiration. (Dkt. No. 30

17    at 1.) Chris Palso, a Chase Registration Manager located in Jacksonville, Florida, was told by

18    employee John Bowman that Crawford called the Pricing Desk on April 20, 2010 to discuss what

19    could be done about submitting a loan lock extension request for a loan rate lock that had expired

20    on April 19, 2010. (Id. at 2.) Palso says it was his understanding Bowman informed Crawford

21    any new extension request would not be honored, and instead the loan would be relocked at the

22    worst case pricing plus a relock fee. (Id.) Palso witnessed Bowman sign a document describing

23    the events of the phone call, where Bowman said Crawford asked about backdating, and

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 3

1   Bowman informed Crawford they would know if a request had been backdated because no work

2   from the 19th was unfinished. (Dkt. No. 30-1 at 9.)  Bowman wrote he told Crawford a

3   backdated request would not be honored and advised him not to submit one. (Id.) Crawford

4   submitted a backdated request that same day. (Id. at 10.) Crawford disputes the accuracy of

5   Bowman's statement, stating he did not ask for instructions about the loan lock process, and

6   Bowman did not give any; rather, the conversation was limited to whether or not Bowman

7   received a request from Crawford on the 19th. (Dkt. No. 32-1 at 18.)

8        On April 22, 2010, Palso contacted Corallino to alert her to the backdated request to

9   determine what happened and what could be done to prevent backdating in the future, stating it

10  posed a risk to Chase's "daily reporting and hedging." (Dkt. No. 30 at 3.) A few days later,

11  Chase Investigator Barbara Tainter from the Global Security and Investigations department

12  contacted Palso to discuss the incident. (Id.) Tainter investigated the matter and determined there

13  was sufficient credible evidence Crawford falsified bank records with the backdated request.

14  (Dkt. No. 31 at 1.) Tainter testifies further investigation revealed that between 2007 and 2010,

15  Crawford submitted 16 loan lock extensions where the submission date and the routing date were

16  inconsistent. (Id. at 1-2.)

17       On April 29, 2010, Tainter met with Corallino and Crawford. (Dkt. No. 31 at 3.) This was

18  the first time Tainter met either Corallino or Crawford. (Id.) During their meeting, Crawford

19  denied falsifying the date on the April 19, 2010 extension request. (Id.) The following day,

20  Tainter received an E-Mail from Crawford in which he contended his computer failed and did

21  not send the request he put in on the 19th, and he made a permissible extension because

22  "modifications authored from the Loan Lock Staging data base dated to coincide with an action

23  deadline are routinely allowed. These requests are honored so long as they are received in the

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1   que by the next business day." (Dkt. No. 31-1 at 7.)  Crawford admitted he "used this method to

2   create the. . . extension." (Id.) Around this time, Crawford was placed on administrative leave.

3   (Dkt. No. 16 at 5.)

4        Tainter sent Crawford's E-Mail to Palso, who responded that "the Registration

5   department has never promoted or supported the process detailed" in Crawford's E-Mail. (Dkt.

6   No. 31-1 at 10.) Tainter sent an internal investigation report to Corallino and others stating

7   forensic investigation was able to determine there was no evidence Crawford's laptop failed on

8   April 19, 2010, but could not confirm Crawford changed the date on his laptop to backdate the

9   loan lock request because "the Security Event Logs could not be viewed." (Id. at 2.)

10       Crawford was terminated on or about May 15, 2010. (Dkt. No. 16 at 5.) Chase contends

11  the termination was the result of Crawford's backdating of the April 19th loan lock request and

12  previous similar actions. (Dkt. No. 26 at 1.) Crawford claims this is pretext, and he was

13  terminated for missing work to care for his mother. (Dkt. No. 16 at 6.) Crawford also alleges

14  Chase wrongfully refused to provide him family medical leave. (Id.) Chase seeks summary

15  judgment in its favor on all issues. (Dkt. No. 26.) Crawford opposes summary judgment and in

16  his response, includes a cross-motion for partial summary judgment that Corallino wrongfully

17  interfered with his right to apply for family medical leave under FMLA.  (Dkt. No. 33.)

18                                         **Analysis**

19       I.      Improper Cross-Motion for Summary Judgment

20       In his response to Defendant's motion, Crawford attempts to make a cross-motion for

21  partial summary judgment by embedding a motion in his response, maintaining the noting date

22  of Defendant's motion. This cross-motion is not properly submitted. Local Civil Rule 7(b)(1)

23  says it is the obligation of the moving party to include in the caption of a motion the proper

24

1   noting date. Here, the motion was included in responsive briefing and used the noting date

2   associated with the original motion. (Dkt. No. 33.) This gave Defendant inadequate time to

3   respond. Further, the cross-motion was submitted August 5, 2013, and the deadline for

4   dispositive motions in this case was July 18, 2013. (Dkt. No. 24.) Because the cross-motion is

5   untimely and improperly noted, it is stricken and will not be considered.

6         II.     Summary Judgment Standard and Admissible Evidence

7         Summary judgment is warranted if no material issue of fact exists for trial.  Warren v.

8   City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The

9   underlying facts are viewed in the light most favorable to the party opposing the motion.

10  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary

11  judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

12  the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

13  moving for summary judgment has the burden to show initially the absence of a genuine issue

14  concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the

15  moving party makes this showing, the burden shifts to the nonmoving party to establish the

16  existence of an issue of fact regarding an element essential to that party's case, and on which that

17  party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

18  (1986).

19
20        To discharge their burden, the nonmoving party cannot rely on its pleadings, but instead

21  must have evidence showing that there is a genuine issue for trial.  Id. at 324.  The nonmoving

22  party does not, however need to produce evidence in a form that would be admissible at trial in

23  order to avoid summary judgment. Id. Federal Rule of Civil Procedure 56(e) "permits a proper

24  summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in

Rule 56(c), except the mere pleadings themselves…" Id. Rule 56(c) says a party may support

summary judgment pleadings by "citing to particular parts of materials in the record…" and lists

several examples, including depositions, documents, stipulations and affidavits.  "At the

summary judgment stage, we do not focus on the admissibility of the evidence's form. We

instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th

Cir. 2002). Where evidence could be presented in an admissible form at trial, such as being read

into the record to refresh recollection, it is admissible at the summary judgment stage. Id.

       Here, Chase objects to several portions of Crawford's response. (Dkt No. 25 at 4.) Chase

objects first to references to the depositions of Mark Crawford, Edwin Quick, and Donna

Corallino and exhibits thereto which are not in the record before the Court. (Id.) The Court notes

it will not consider references to records not before the Court, and disregards unsupported

references.  Fed. R. Civ. P. 56(c). Chase also objects to references to a document allegedly from

the Department of Labor on the grounds it does not identify the author, is not authenticated by

either defense counsel of Plaintiff, and appears to be incomplete and containing inadmissible

hearsay. (Dkt. No. 25 at 4.) The Court notes Crawford signed a declaration authenticating pages

two and three of the Department of Labor report. (Dkt. No. 33-2 at 2.) The Court finds these

documents could be admissible in some form at trial, and will consider the exhibit for the

purpose of summary judgment.  Finally, Chase objects to Plaintiff's references to un-redacted

confidential documents on the grounds they contain information covered by a stipulated

confidentiality agreement. (Dkt. No. 25 at 4.) Specifically, Chase is concerned about third party

financial information. (Dkt. No. 37-2 at 2.) This sensitive information is, regardless of

confidentiality, irrelevant to the substance of this case and will not be considered.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 7

1      III.    FMLA and WFLA Claims

2      The Family Medical Leave Act, 29 U.S.C. §2615(a), created two interrelated, substantive

3 rights: (1) the employee has a right to use certain amounts of leave for protected reasons, and (2)

4 the employee has a right to return to his or her job or an equivalent after using protected leave.

5 Sanders v. City of Newport, 657 F.3d 772, 777 (9th Cir. 2011). The FMLA places an affirmative

6 burden on an employer to notify employees of their rights under the Act. Bushfield v. Donahoe,

7 912 F. Supp. 2d 944, 952 (D. Idaho 2012). Section 2615(a)(2) makes it unlawful for employers

8 to retaliate or discriminate against a person for opposing any violation of their FMLA right to

9 leave. Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain or deny"

10 the exercise or attempt to exercise FMLA leave. The Washington Family Leave Act "mirrors its

11 federal counterpart and provides that courts are to construe its provisions in a manner consistent

12 with similar provisions of the FMLA." Washburn v. Gymboree Retail Stores, Inc., 2012 U.S.

13 Dist. LEXIS 156240, *21 (W.D. Wash. Sept. 4, 2012).

14      A.  Retaliation Claim

15      "Under §2615(a)(2), it is 'unlawful for any employer to discharge or in any other manner

16 discriminate against any individual for opposing any practice made unlawful by this subchapter."

17 Sanders, 653 F.3d at 777.  An allegation under this section is a retaliation or discrimination

18 claim. Id. In Bachelder v. Am. W. Airlines, Inc., the Ninth Circuit expressly did not decide

19 whether the burden shifting framework articulated in McDonnell Douglas v. Green, 411 U.S.

20 792 (1973), should be applied to retaliation claims under §2615(a)(2). 259 F.3d 1112, 1125, n.

21 11 (9th Cir. 2001). The Ninth Circuit acknowledges, however, most other circuits have adopted

22 some version of the McDonnell Douglas burden shifting framework.  Sanders, 653 F.3d at 777.

23

24

1    District Courts in the Ninth Circuit have used the <u>McDonnell Douglas</u> framework in the analysis

2    of §2615(a)(2) claims. See, <u>Bushfield</u>, 912 F. Supp. 2d at 953.

3           Under the <u>McDonnell Douglas</u> framework, a plaintiff must establish a prima facie case of

4    retaliation. <u>Id</u>. To establish a prima facie case of FMLA retaliation, a plaintiff must show (1) he

5    availed himself to a protected right under the FMLA, (2) he was adversely affected by an

6    employment decision, and (3) there is a causal connection between the two actions. <u>Washington</u>

7    <u>v. Fort James Operating Co.</u>, 110 F. Supp. 2d 1325, 1331 (D. Or. 2000).  If a prima facie case is

8    established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason

9    for the adverse action. <u>Sanders</u>, 657 F.3d at 777, n.3. If the employer articulates a legitimate

10   reason for its action, the burden shifts back to the plaintiff to show the reason given is pretext. <u>Id</u>.

11   Pretext can be proven indirectly, by showing the employer's explanation is not credible because

12   it is internally inconsistent or otherwise not believable, or directly, by showing unlawful

13   discrimination more likely motivated the employer. <u>Id</u>.

14          Crawford incorrectly asserts the <u>McDonnell Douglas</u> framework does not apply and

15   instead he need only show he was subjected to "negative consequences" because he asserted his

16   right to FMLA leave, relying on <u>Xin Liu v. Amway Corp.</u>, 347 F.3d 1125, 1136 (9th Cir. 2003).

17   This is a misinterpretation of <u>Xin Liu</u>, which uses this test for a non-retaliation claim. Unlike in

18   <u>Xin Liu</u>, Crawford asserts a proper retaliation claim because he argues Chase disciplined him in

19   retaliation for opposing, by contacting Human Resources, his unlawful denial of FMLA benefits.

20   (Dkt. No. 16 at 5.) <u>Xin Liu</u> specifically distinguishes retaliation cases. <u>Xin Liu</u>, 347 F.3d at 1136.

21          Chase argues the recently decided Supreme Court case <u>Univ. of Tex. Southwestern Med.</u>

22   <u>Ctr. v. Nassar</u>, 133 S. Ct. 2517 (2013) holds, for the third prong of the prima facie case to be met,

23   the protected FMLA action must be the "but for" cause of the adverse employment action. (Dkt.

24

1    No. 26 at 15.) <u>Nassar</u> deals specifically with Title VII of the Civil Rights Act, not FMLA, and

2    the Court hesitates to assume the analysis is interchangeable. However, a decision on this point is

3    not necessary because even assuming Plaintiff can establish a prima facie retaliation claim he

4    cannot show Chase's legitimate reason for his termination is pretext.

5           Crawford claims Chase retaliated against him for reporting to Human Resources

6    Corallino's willful refusal to provide him leave. (Dkt. No. 16 at 5.) Chase contends Crawford

7    was terminated for violating Chase policies by backdating loan lock requests. (Dkt. No. 26 at 1.)

8    Crawford has not shown, either directly or indirectly, backdating financial documents is pretext

9    for his termination.  Chase's explanation is both internally consistent and believable. Crawford

10   admits to altering the date on several loan lock requests. (Dkt. No. 31-1 at 7.) This is an action

11   that violates Chase policy. (Dkt. No. 30 at 3.) Chris Palso, who alerted Corallino to the

12   backdating concerns, had never met Crawford when the issue arose and had no reason to be

13   aware of any leave issues. (<u>Id</u>. at 4.) Palso also testifies Chase was unaware of the previous

14   backdating procedures performed by Crawford until the investigation was launched following

15   the April 19th backdating. (<u>Id</u>. at 3.) There is no reason to believe, and Crawford produces no

16   evidence to show, Chase used the backdating problem as pretext for termination actually based

17   on Crawford's use of leave. Because Chase makes a strong showing Crawford was terminated

18   for backdating financial documents and for no reason related to his use of leave, summary

19   judgment is GRANTED in favor of Chase as to the retaliation claim under FMLA and WFLA.

20          B.  Interference Claim

21          An interference claim is based on §2615(a)(1) which states, "[i]t shall be unlawful for

22   any employer to interfere with, restrain, or deny the exercise or the attempt to exercise" the

23   substantive rights guaranteed by FMLA. 29 U.S.C. §2615(a)(1). The Ninth Circuit does not

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 10

apply the burden shifting framework delineated in <u>McDonnell Douglas Corp. v. Green</u> to

interference claims. <u>Denison v. Kaiser Found. Health Plan of the Northwest</u>, 868 F. Supp. 2d

1065, 1080 (D. Or. 2012). To make an FMLA interference claim, an employee need only

establish "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the

FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his

intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."

<u>Sanders</u>, 657 F.3d at 778. The employer's intent is irrelevant in an interference claim. <u>Bushfield</u>,

912 F. Supp. 2d. at 954.

As noted above, it is the responsibility of an employer to determine when FMLA leave is

appropriate, and an employee does not have to expressly assert rights under FMLA.  <u>Xin Liu</u>,

347 F.3d at 1134. However, even if there is a technical violation under FMLA, an employee who

does not suffer any harm and receives all leave requested is not entitled to relief under the

FMLA. <u>Washburn</u>, 2012 U.S. Dist. LEXIS 156240, *20. The FMLA "provides no relief unless

the employee has been prejudiced by the violation." <u>Ragsdale v. Wolverine World Wide, Inc</u>.,

535 U.S. 81, 89 (2002).

Plaintiff cannot survive summary judgment on his interference claim because he received

all leave he requested, and was not prejudiced by working a flexible schedule rather than taking

FMLA leave. Plaintiff was not denied FMLA leave because he received leave he was happy

with: a flex-time arrangement that allowed him to come and go as he pleased. (Dkt. No. 26 at

22.) Chase correctly notes <u>Xin Liu</u> is distinguishable because in <u>Xin Liu</u> the incorrect

designation of leave as "personal" made it subject to employer discretion, where Crawford's

flex-time arrangement gave him complete discretion over his absences, and Crawford agreed to

this arrangement. (<u>Id</u>.) Crawford's allegations he felt criticized for using his flexible schedule are

1   not sufficient to show prejudice, especially where Crawford made no clear complaints about his

2   flexible schedule following its institution. Crawford cannot make a prima facia FMLA

3   interference claim because he cannot show any leave was denied, and he is not entitled to relief

4   under FMLA because he shows no prejudice. Summary judgment on the interference claim

5   under FMLA and WFLA is GRANTED.

6                                     **Conclusion**

7         Defendant demonstrates a legitimate reason for Plaintiff's termination and Plaintiff does

8   not show this reason is pretext. Plaintiff was able to take flexible leave and his FMLA leave was

9   not interfered with. Summary judgment is GRANTED in favor of Defendant on all issues.

10

11         The clerk is ordered to provide copies of this order to all counsel.

12         Dated this 30th day of August, 2013.

13

14

15

                                    Marsha J. Pechman

16                                     Chief United States District Judge

17

18

19

20

21

22

23

24